[Cite as *State v. Ross*, 2024-Ohio-2251.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | | C.A. No. 30810 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| DONNIE ROSS | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR 22 07 2542 |

DECISION AND JOURNAL ENTRY

Dated: June 12, 2024

STEVENSON, Presiding Judge.

{¶1} Defendant-Appellant Donnie Ross appeals the judgment of the Summit County Common Pleas Court that found him guilty of operating a vehicle under the influence of alcohol ("OVI"). This Court affirms.

I.

{¶2} Mr. Ross was charged with two counts of OVI in violation of R.C. 4511.19(A)(1)(a)/(G)(1)(e) and R.C. 4511.19(A)(2)(a)/(A)(2)(b)/(G)(1)(e)(OVI with refusal to submit to chemical test), felonies of the third degree, and criminal damaging or endangering in violation of R.C. 2909.06(A)(1)/(B), a misdemeanor of the second degree. Counts one and two included a specification for a prior felony OVI within 20 years.

{¶3} The matter proceeded to trial. The State presented the testimony of three police officers as well as body camera footage from two of the officers. The jury found Mr. Ross guilty

on the two counts of OVI. Count three was dismissed. The trial court merged counts one and two for purposes of sentencing, and at the State's election, sentenced Mr. Ross on count one.

{¶4} Mr. Ross timely appealed and asserts one assignment of error for our review.

II.

## ASSIGNMENT OF ERROR I

**THE STATE PRODUCED INSUFFICIENT EVIDENCE TO SUPPORT MR. ROSS'S CONVICTION AND HIS CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶5} Mr. Ross argues in his single assignment of error that his convictions are against both the sufficiency and manifest weight of the evidence. In presenting those arguments, Mr. Ross has not separately argued sufficiency and manifest weight. We have recently stated the following on this subject:

> "[S]ufficiency and manifest weight are separate and distinct questions, and this Court has repeatedly noted that it is not appropriate to combine sufficiency and manifest weight arguments within a single discussion." *State v. Zappa*, 9th Dist. Wayne No. 20AP0025, 2022-Ohio-243, ¶ 6, *** *See also* App.R. 12(A)(2) ("The court may disregard an assignment of error presented for review if the party raising it fails to * * * argue the assignment separately in the brief[.]"); ***. "Moreover, 'these concepts differ both qualitatively and quantitatively.'" *Zappa* at ¶ 6, quoting *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 25.

*State v. Mingo*, 9th Dist. Summit No. 30588, 2024-Ohio-543, ¶ 28. "To aid the administration of justice, however, we choose to exercise our discretion and will separately consider [Mr. Ross's] combined arguments." *Id.*

### Sufficiency of the Evidence

{¶6} Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt."

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*.

**{¶7}** Mr. Ross argues that his convictions for OVI are not supported by sufficient evidence because there was no evidence that: (1) he was operating his vehicle, and (2) that he was under the influence. Mr. Ross does not raise as error whether he was offered and refused a chemical test under count two, nor does he contest the special finding of a prior OVI.

**{¶8}** R.C. 4511.19(A)(1)(a) prohibits operating a vehicle under the influence of alcohol and provides that "[n]o person shall operate any vehicle * * * if, * * * [t]he person is under the influence of alcohol * * * ." Mr. Ross argues that the evidence was insufficient that he was operating a vehicle because the only evidence supporting that fact was the testimony of the officer that made initial contact with him. He maintains that as that officer did not supply body or dash camera video footage, the jury impermissibly inferred that he was operating a vehicle.

**{¶9}** Officer Jeff Shields, a retired reserve officer with the Akron Police Department, testified that he was working a side job for a construction company at the corner of Russell Avenue and Manchester Road in Akron, Ohio. At some point during his shift, he observed Mr. Ross driving a white SUV reverse to traffic, eastbound in the westbound lane on Russell Avenue. The SUV turned onto Manchester Road, then shortly afterwards "it came back through again and it did so multiple times[,]" driving around the five-foot tall barricades. Thereafter, the SUV stopped, facing reverse to traffic and blocking the entire road. Officer Shields then approached the SUV and made contact with Mr. Ross, explaining to him that the road was closed.

{¶10} Mr. Ross got back into the SUV and drove away. A few minutes later, Mr. Ross returned to the construction site in the same SUV. He drove around the barricade and pulled into the driveway of a home located a few houses away on Russell Avenue. Officer Shields recognized Mr. Ross from his previous trips through the area during a 15-20 minute time frame. Officer Shields then drove his cruiser to the driveway and blocked the SUV so Mr. Ross could not back out onto the road.

{¶11} From the foregoing, after viewing the evidence in the light most favorable to the State, we conclude that the jury could have found beyond a reasonable doubt that Mr. Ross operated his vehicle on the day in question.

{¶12} Regarding whether Mr. Ross was under the influence, this Court has previously spoken about the type of evidence required to support a conviction under R.C. 4511.19(A)(1):

> "[I]n DUI prosecutions, the state is not required to establish that a defendant was actually impaired while driving, but rather, need only show an impaired driving ability. *State v. Zentner*, 9th Dist. No. 02CA0040, 2003–Ohio–2352, at ¶ 19, citing *State v. Holland* (Dec. 17, 1999), 11th Dist. No. 98–P–0066. 'To prove impaired driving ability, the state can rely on physiological factors (e.g., odor of alcohol, glossy or bloodshot eyes, slurred speech, confused appearance) to demonstrate that a person's physical and mental ability to drive was impaired.' *Holland*, [supra], citing *State v. Richards* (Oct. 15, 1999), 11th Dist. No. 98–P–0069[ ].

*State v. Peters*, 9th Dist. Wayne No. 08CA0009, 2008-Ohio-6940, ¶ 5.

{¶13} Officer Shields testified that when he first stopped Mr. Ross to advise him of the road closure, Mr. Ross was very disheveled looking and cursing. Officer Shields believed Mr. Ross was intoxicated because of his slurred speech, unsteady gait, which included leaning on the vehicle rather than standing upright, and his uncooperative demeanor. A few minutes later, right after Officer Shields blocked Mr. Ross's vehicle from leaving the driveway of the residence on Russell, Officers Gramley, Muhlenkamp, and Jaskolka arrived on the scene as Officer Shields had

called for back-up. At that point, Mr. Ross had begun walking towards the construction site so Officer Gramley handcuffed Mr. Ross to secure him.

{¶14} Officer Muhlenkamp testified that when she arrived on the scene, wearing a body camera, she observed Mr. Ross stumbling, leaning on one of the other officers, not being cooperative, slurring his words, and emanating an odor of alcohol. The footage from her body camera was played for the jury. In that footage, Mr. Ross said he had been drinking that day.

{¶15} Officer Gramley testified that when he arrived, wearing a body camera, he spoke briefly to Officer Shields then walked over to Mr. Ross. Officer Gramley's body camera footage was played for the jury. Officer Gramley testified that he believed Mr. Ross was intoxicated because Mr. Ross's breath smelled of alcohol, his eyes were bloodshot and glassy, he was slurring his speech, and was being combative.

{¶16} Ross argues that the officers' testimony is not sufficient to establish that he was impaired during the time that Officer Shields observed him driving. We disagree. From the foregoing, the State provided evidence which could convince the jury that Mr. Ross was under the influence of alcohol when he was operating his vehicle. Officer Shields testified that Mr. Ross exhibited signs of intoxication when he first spoke with him, then Mr. Ross got back into his SUV and drove away. From this the jury could have found that Mr. Ross was intoxicated both before Officer Shields approached him and when he returned to his vehicle and drove away. When Officers Gramley and Muhlenkamp arrived just a few minutes later, after hearing over the dispatch that Mr. Ross had been driving through the area and speaking with Officer Shields, they also observed physiological indications of impairment from Mr. Ross. As Officers Gramley and Muhlenkamp observed these indications of intoxication a short time after Officer Shields observed

him driving, the jury could have found that he was impaired while driving. In addition, Mr. Ross admitted to drinking earlier that day.

{¶17} Accordingly, we conclude that the evidence, when viewed in the light most favorable to the State, would convince the average mind beyond a reasonable doubt that Mr. Ross operated his vehicle while under the influence of alcohol and was sufficient to sustain his OVI convictions. Mr. Ross's sufficiency argument is overruled.

### Manifest Weight of the Evidence

{¶18} As previously noted, even though Mr. Ross did not separately argue his sufficiency and manifest weight challenges, in the exercise of discretion, this Court is nonetheless separately considering those challenges.

{¶19} When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *State v. Croghan*, 9th Dist. Summit No. 29290, 2019-Ohio-3970, ¶ 26.

{¶20} It is well-established that "a trier of fact enjoys the best position to assess the credibility of witnesses." *State v. Tyus,* 9th Dist. Summit No. 29520, 2020-Ohio-4455, ¶ 57. *See also Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35 ("the jury is free to believe all, part, or none of the testimony of each witness."). This Court "'will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version.'" *State v. Tolliver*, 9th Dist.

Lorain No. 16CA010986, 2017-Ohio-4214, ¶ 15, quoting *State v. Barger*, 9th Dist. Medina No. 14CA0074-M, 2016-Ohio-443, ¶ 29.

{¶21} Mr. Ross maintains that his vehicle was inoperable on the day in question and incapable of being driven. He testified that it had been towed to the residence on Russell the day before due to transmission problems and argues that he would not have paid to have his vehicle towed if he could have driven it. He further testified that he was already present at the residence on Russell, which belonged to the mother of his children, pulling weeds for several hours prior to his encounter with the officers. This contradicts the testimony of Officer Shields that Mr. Ross drove through the area multiple times before pulling into the driveway of the residence.

{¶22} The jury was free to disbelieve Mr. Ross's testimony that his vehicle was inoperable and that he had not been driving. Similarly, the jury was free to believe Officer Shields' testimony, despite not having a body camera, that Mr. Ross had made multiple trips through the area in his SUV prior to stopping at the residence, including driving against traffic. The woman at the residence corroborated Officer Shields' testimony that Mr. Ross drove his SUV into the driveway and that he had not been present hours before. The jury was within its purview to find Officer Shields credible and Mr. Ross not credible as to whether Mr. Ross was operating his vehicle.

{¶23} Regarding whether Mr. Ross was impaired, he argues that without chemical evidence, the testimony of Officers Gramley and Muhlenkamp is unreliable because it is based on Officer Shields' uncorroborated statements to them that he was impaired. He contends that the officers should have transported him to a hospital and subjected him to a blood test to confirm that he was under the influence. Mr. Ross has not provided any law which places a burden on police officers to transport drivers who refuse a breath alcohol test to the hospital for testing and we will not judicially craft such a requirement.

{¶24} Furthermore, this case entails not only Mr. Ross's behavioral indications of impairment and lack of body control as observed by the officers, but Mr. Ross's specific admission of alcohol use that day. Officer Shields observed Mr. Ross as manifesting signs of impairment. Officers Gramley and Muhlenkamp testified as to their independent observations of Mr. Ross's intoxication. The body camera footage reflected that Mr. Ross admitted to drinking that day and showed that he was slurring his speech, was unsteady on his feet, exhibited glassy eyes, and behaved in an uncooperative manner consistent with the testimony of all three officers. Moreover, due to the closeness in time of Officer Gramley and Officer Muhlenkamp's observations of Mr. Ross to Officer Shields' same observations when he stopped Mr. Ross the first time, the testimony of Officers Gramley and Muhlenkamp corroborated Officer Shields' testimony that Mr. Ross was under the influence while driving.

{¶25} The jury heard the foregoing testimony and watched the body camera footage. Upon our thorough review of the entire record, we conclude that the jury, in resolving any conflicts in the evidence, did not clearly lose its way and create a manifest miscarriage of justice requiring a reversal of Mr. Ross's convictions for OVI. *See Otten*, 33 Ohio App.3d at 340*; Thompkins*, 78 Ohio St.3d at 387. Mr. Ross's manifest weight of the evidence argument is overruled.

### III.

{¶26} Accordingly, based on the foregoing, Mr. Ross's single assignment of error is overruled. The judgment of the Summit County Court of Common Pleas that found Mr. Ross guilty of OVI is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

HENSAL, J.
FLAGG LANZINGER, J.
CONCUR.

APPEARANCES:

STEPHEN M. GRACHANIN, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.